[Cite as *Dublin v. Starr*, 2022-Ohio-2298.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Dublin, | : | |
| Plaintiff-Appellee, | : | No. 21AP-173 |
| | | (M.C. No. 2020 CRB 011701) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Rick Starr, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 30, 2022

**On brief:** *Frost Brown Todd LLC*, *Stephen J. Smith,* *Martin C. Nobile,* and *MacKenzie B. Newberry*, for appellee. **Argued:** *Stephen J. Smith, Jr.*

**On brief:** *Campbell Law, LLC*, and *April F. Campbell*, for appellant. **Argued:** *April F. Campbell*.

APPEAL from the Franklin County Municipal Court

JAMISON, J.

{¶ 1} Defendant-appellant, Rick Starr, appeals from a judgment of the Franklin County Municipal Court, convicting appellant of assault in violation of R.C. 2903.13. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 12, 2020, appellant was living in Dublin, Ohio with his 16-year-old daughter M.S. and a man named Mike Wood, who rented a room from appellant. On the night in question, M.S. and her boyfriend, 18-year-old G.A., were watching a movie in the downstairs theater room at appellant's residence. Appellant, a real estate agent, was working upstairs.

{¶ 3}   Appellant admitted that he sometimes let G.A. spend the night with his daughter in the theater room, but he testified that he believed G.A. would be leaving around midnight on August 12, 2020.  M.S. and G.A. testified that at approximately 11:00 p.m., they could hear appellant yelling at someone over the telephone.  According to M.S. and G.A., appellant subsequently came downstairs at 11:20 p.m. or 11:30 p.m., and yelled for M.S. to exit the theater room.  When M.S. answered the door, an argument ensued between appellant and M.S. concerning the amount of fish food she had put in the fish tank.  When the argument became heated, appellant told G.A. to leave.

{¶ 4}   M.S. recalled the events that followed during her trial testimony.  M.S. testified that as she was arguing with her father, and gathering her things to go to her upstairs bedroom, appellant grabbed her by the hair and threw her to the ground. M.S. denied punching or striking appellant at any time.  M.S. testified that appellant had a "death grip on [her] hair" and that he was pushing her head against the floor.  M.S. yelled for help from G.A. when she was unable to free herself.  (Tr. Vol. I at 34.)  According to M.S., G.A. began struggling with appellant to get him to release her.  M.S. testified appellant struck G.A. in the face multiple times during the struggle.

{¶ 5}   M.S. testified that when appellant released her, he rushed toward G.A.  G.A. was eventually able to get behind appellant, grab him around the neck, and subdue him. When G.A. fell backward while holding appellant by the neck, appellant struck his head against the wall.  Both M.S. and G.A. called police.

{¶ 6}   Appellant's version of the events differs from M.S.'s and G.A.'s.  He testified that when he saw the amount of fish food in the fish tank, he became concerned that M.S. was under the influence of drugs or alcohol.  According to appellant, he called for M.S. several times before she answered the door.  Appellant testified that M.S. then took a couple of steps toward him as he stood in the doorway to the theater room, and punched him in the face.  Appellant then grabbed M.S. by her hair in an effort to hold her at arms-length as she continued to throw punches at him.  Appellant testified that G.A. then grabbed him around the neck from behind and began choking him.  Appellant admitted he tried to strike G.A. with his elbow, but only to get G.A. to release his choke hold.  Appellant testified that G.A. choked him into unconsciousness and that he hit his head on the wall as he fell.

{¶ 7} Plaintiff-appellee, City of Dublin, subsequently charged appellant with domestic violence, a misdemeanor of the first degree, and assault, also a misdemeanor in the first degree. Both charges in case No. 2020 CRB 011701, arose out of the incident with M.S. A separate case was later filed against appellant by the City of Hilliard for violating a civil protection order ("CPO") as to G.A.

{¶ 8} The trial court subsequently granted a motion filed by the City of Hilliard to join the two cases for trial. The motion was unopposed.[1] The case was tried to the court on February 17 and 18, 2021. At the close of appellee's case-in-chief, appellant orally moved the court for acquittal pursuant to Crim.R. 29. The trial court took the motion under advisement, without argument, but never expressly ruled on the motion. Appellant renewed his motion for acquittal at the close of the evidence, but the trial court denied the motion.

{¶ 9} The trial court heard testimony from M.S., G.A., four City of Dublin police officers, two City of Hilliard police officers, G.A.'s father, Adam Anthony, Wood, and appellant. At the close of all evidence the trial court made the following ruling:

> This is the story of a family that's screwed up. Okay. No excuse for a 16-year-old and an 18-year-old to be spending the nights together. I don't care what you say. I don't care what the excuse is. I mean, I heard [M.S.] say that she never used profanity against her father, but when she talked and testified and all the other things, I haven't heard sailors speak like that. Okay? It's just not right.
>
> However, I have to go on the basis of beyond a reasonable doubt. I don't believe that [M.S.] struck Rick Starr. I don't believe that the testimony was sufficient to prove that. The Court is going to make the following findings. You may not like it. You may. I don't care. But this is the way I feel about it.
>
> I'm going to find him not guilty of the assault on [G.A.]. Because even though [G.A.] said he came to the aid of his girlfriend, he had no right to do that. He grabbed him and that's how [G.A.] got hurt. Okay. So I'm going to find him not guilty on that.

---

[1] Appellant claims that the trial court never formally ruled on the motion, but does not deny the two cases were tried jointly.

I'm going to find him guilty of the offense of assault on [M.S.], and I'm going to find him not guilty of the domestic violence. I want him on for the assault. I think that was totally your fault. You should - - you know, you're an adult, and I hope you've learned from this experience what's right and wrong. And what I'm going to do is find you guilty of the assault, and I'm going to order a presentence investigation by probation, because I don't know anything about this gentleman.

And if he's a candidate for probation, then he gets probation. If they say he doesn't need it, then he doesn't need it. But you will have this. And I feel sorry for that young girl at 16. Okay. That's all.

(Tr. Vol. II at 399-400.)

{¶ 10} On February 19, 2021, the trial court issued a judgment entry convicting appellant of assault, in violation of R.C. 2903.13, a misdemeanor of the first degree. The trial court ordered a pre-sentence investigation and scheduled a sentencing hearing for March 31, 2021.

{¶ 11} On March 31, 2021, the trial court issued a sentencing entry imposing a $500 fine and a jail term of 180 days, less one day of jail-time credit. The trial court suspended 149 days of the jail sentence, but ordered appellant to serve 30 days, "3 days each month for 10 months * * * probation to set dates." (Mar. 31, 2021 Sentencing Entry.) The trial court also placed appellant on community control for a period of two years.[2]

{¶ 12} Appellant timely appealed to this court from the judgment of the Franklin County Municipal Court. By journal entry filed June 2, 2021, this court granted appellant's motion to stay the jail sentence imposed by the trial court pending appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

[1.] Starr's constitutional and Crim.R. 43 right to be present at the critical stage of his arraignment and temporary protection order hearing was denied, and because it prejudiced him, this Court should reverse his conviction.

---

[2] We note that the March 31, 2021 sentencing entry mistakenly indicates appellant pleaded guilty to assault, in violation of R.C. 2903.13, even though the trial court found appellant guilty of assault following a bench trial. Because we recognize this mistake as plain error, we shall remand this case to the trial court to issue a corrected sentencing entry, nunc pro tunc.

[2.] Starr's conviction should be reversed because unrelated charges, that would not have been able to be introduced in separate trials, were joined for the trial in Starr's case.

[3.] Because Defense Counsel did not move to have Starr's cases severed, Counsel was prejudicially ineffective at Starr's trial.

[4.] The trial court failed to rule on Starr's Crim.R. 29 motion at the close of the State's case, prejudicing Starr.

[5.] This Court should overturn its decision to find that self-defense does not fall under the sufficiency of the evidence standard.

[6.] The State's evidence was insufficient to disprove self-defense, thus Starr's conviction for assault was legally insufficient.

[7.] The evidence weighed manifestly against convicting Starr of assault.

[8.] The trial court used the wrong legal standards in reviewing and weighing the evidence: it used the wrong standard for both Starr's reasonable parental discipline defense, and for the State's burden to disprove self-defense. Thus, Starr's assault conviction should be reversed.

[9.] Starr was denied his right to a fair trial in this case because of cumulative error.

## III. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 14} In appellant's first assignment of error, appellant argues that the trial court violated Crim.R. 43 when it arraigned him on the charges related to M.S. and heard testimony regarding the temporary CPO without his presence in the courtroom. We disagree.

{¶ 15} Crim.R. 43(A) instructs the trial court when defendant's physical presence at a criminal proceeding is required:

(1) Except as provided in Rule 10 of these rules and division (A)(2) of this rule, the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the

imposition of sentence, except as otherwise provided by these rules.

{¶ 16} Crim.R. 43(A) requires that a criminal defendant be present at the arraignment and at every stage of the trial. However, a defendant's right to be present at trial is not absolute. *State v. White*, 82 Ohio St.3d 16, 26 (1998). For example, Crim.R. 43(A) provides that if a trial is commenced in the presence of the defendant, who thereafter voluntarily absents himself, the trial may continue in defendant's absence. *State v. Dennis*, 10th Dist. No. 04AP-595, 2005-Ohio-1530, ¶ 10, citing *State v. Harrison*, 88 Ohio App.3d 287, 290 (1st Dist.1993). Therefore, the right to be present at trial may be waived by the defendant's own acts. *State v. Meade*, 80 Ohio St.3d 419, 421 (1997).

{¶ 17} Crim.R. 43(A)(2) provides:

> Notwithstanding the provisions of division (A)(1) of this rule, in misdemeanor cases or in felony cases where a waiver has been obtained in accordance with division (A)(3) of this rule, the court may permit the presence and participation of a defendant by remote contemporaneous video for any proceeding if all of the following apply:
>
> (a) The court gives appropriate notice to all the parties;
>
> (b) The video arrangements allow the defendant to hear and see the proceeding;
>
> (c) The video arrangements allow the defendant to speak, and to be seen and heard by the court and all parties;
>
> (d) The court makes provision to allow for private communication between the defendant and counsel. The court shall inform the defendant on the record how to, at any time, communicate privately with counsel. Counsel shall be afforded the opportunity to speak to defendant privately and in person. Counsel shall be permitted to appear with defendant at the remote location if requested.
>
> (e) The proceeding may involve sworn testimony that is subject to cross examination, if counsel is present, participates and consents.[3]

---

[3] Crim.R. 43(A)(2) was amended effective July 1, 2022. The new version of Crim.R. 43(A)(2) eliminates the distinction between misdemeanor and felony prosecutions.

{¶ 18} Appellant admits that he was present at his August 15, 2020 arraignment via video teleconference and that he was represented by counsel. Appellant nevertheless contends that his constitutional right to be present was violated because the trial court heard witness testimony without asking for counsel's consent, and without asking appellant to waive his presence either orally or in writing.

{¶ 19} To any extent that counsel's consent was required in order for the trial court to hear witness testimony, we note that appellant was given prior notice that the proceedings would be conducted by video teleconference, but no oral or written objection was interposed by appellant or his counsel. Thus, counsel's consent is demonstrated on the record. *See* Crim.R. 43(A)(3). Furthermore, our review of the transcript reveals no impact on the fairness of the proceeding arising out of appellant's absence from the courtroom. *See State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 16 (a reviewing court presumes that any constitutional errors are subject to a harmless error analysis if the defendant was represented by counsel and tried by an impartial adjudicator).

{¶ 20} For the foregoing reasons, appellant's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 21} In appellant's second assignment of error, appellant argues that the trial court committed prejudicial error when it joined the three charges against him for a single trial. We disagree.

{¶ 22} Joinder is governed generally by Crim.R. 8(A), which provides in relevant part as follows:

> Two or more offenses may be charged in the same * * *
> complaint in a separate count for each offense if the offenses
> charged, whether felonies or misdemeanors or both, are of the
> same or similar character, or are based on the same act or
> transaction, or are based on two or more acts or transactions
> connected together or constituting parts of a common scheme
> or plan, or are part of a course of criminal conduct.

{¶ 23} Crim.R. 13 further provides that "[t]he court may order two or more indictments * * * to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment." Accordingly, Crim.R. 8 and Crim.R. 13 permit joinder of misdemeanor offenses of the same or similar character. This court has

explained that "[j]oinder is liberally permitted to conserve judicial resources, reduce the chance of * * * incongruous results and excessive trials, and diminish inconvenience to witnesses." *State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452, ¶ 99, *discretionary appeal denied*, 151 Ohio St.3d 1511, 2018-Ohio-365, citing *State v. Schaim*, 65 Ohio St.3d 51 (1992), citing *State v. Torres*, 66 Ohio St.2d 340, 343 (1981).

{¶ 24} Appellant argues that because the charges involving M.S. and the charges involving G.A. were prosecuted by two different municipalities and by two different prosecutors, the joinder of the offenses likely resulted in confusion for the trier of fact. Appellee argues that any trial court error with regard to joinder was harmless to appellant given his acquittal of the charges related to G.A. Although that logic will not always apply, under the particular circumstances of this case, we agree with appellee.

{¶ 25} Under Crim.R. 14, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in [a] * * * complaint * * * the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." In our view, the presentation of evidence by two separate prosecuting attorneys only served to aid the trier of fact in segregating the evidence relevant to the separate charges involving M.S. and G.A., rather than creating confusion. Moreover, this case was tried to the court without a jury. Consequently, the task of separating the evidence relevant to each charge would not have proved difficult for the trier of fact in this case.

{¶ 26} Appellant's claim of prejudice is further undermined by the fact that he was convicted of only one of the three charges. Appellant was acquitted of the domestic violence charge involving M.S. and the single charge related to G.A., which demonstrates the trier of fact was able to separate the evidence relevant to each of the offenses. *See State v. Tucker*, 10th Dist. No. 15AP-1123, 2017-Ohio-7735, ¶ 54 ("[W]e agree with the state's contention that appellant has also failed to demonstrate prejudice, as he was acquitted of the charge in the burglary case (case No. 15CR-424), indicating the jury was able to 'separate the evidence' as to the offenses."). *See also State v. Wampler*, 5th Dist. No. 13-CA-3, 2014-Ohio-37, ¶ 74 (appellant failed to demonstrate prejudice from joinder of counts where jury acquitted him of all counts related to alleged incident of arson on date separate from the date of the incident for which he was convicted); *State v. Bonneau*, 8th Dist. No. 97565, 2012-Ohio-3258, ¶ 22 (not guilty verdict as to the counts relating to one victim and guilty

verdicts as to the counts relating to another demonstrated that the jury was able to separate the evidence and considered each victim separately).

{¶ 27} Accordingly, even if there was a danger of prejudice arising from joinder of the offenses in this case, the record also shows that the trier of fact had little difficultly segregating the evidence relevant to each charge, as evidenced by appellant's acquittal on two of the three charges.

{¶ 28} For the foregoing reasons, appellant's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 29} In appellant's third assignment of error, appellant contends that his trial counsel provided ineffective assistance by failing to move for severance of the two cases for trial.  We disagree.

{¶ 30} "[W]e apply a two-part standard to claims of ineffective assistance, examining (1) whether counsel's performance was deficient, and (2) whether that deficient performance resulted in prejudice to the defendant."  *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 89, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989).  "A party seeking to show prejudice as a result of counsel's alleged deficient performance at trial must establish that there is a reasonable probability that, but for the unprofessional errors of counsel, the outcome of the trial would have been different."  *Neil* at ¶ 89.  "A reasonable probability is one sufficient to undermine confidence in the outcome."  *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 81, citing *Strickland* at 694.

{¶ 31} Crim.R. 14, which governs severance in a criminal matter, states: "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, * * * or by such joinder for trial together of indictments, * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."  Appellant did not file a motion for relief from the joinder of the two complaints in this case.

{¶ 32} Having determined that the trial court did not err when it joined the three offenses for trial, and having concluded that appellant failed to demonstrate unfair prejudice arising from joinder, appellant could not have been prejudiced by any alleged

deficiency in trial counsel's performance with regard to joinder. Accordingly, appellant's third assignment of error is overruled.

### D. Appellant's Seventh Assignment of Error

{¶ 33} For ease of discussion, we shall address appellant's remaining assignments of error out of order. In appellant's seventh assignment of error, appellant argues that his conviction of assault is against the manifest weight of the evidence. More particularly, appellant argues that the trial court erred in convicting him of assault in light of the evidence produced at trial in support of appellant's claim of self-defense and the affirmative defense of reasonable parental discipline. We disagree.

{¶ 34} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Consequently, "a prerequisite for any reversal on manifest-weight grounds is conflicting evidence." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20. An appellate court "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

### 1. Self-defense

{¶ 35} "Ohio defines assault as 'knowingly caus[ing] or attempt[ing] to cause physical harm to another.' " *State v. Faggs*, 159 Ohio St.3d 420, 2020-Ohio-523, ¶ 17, quoting R.C. 2903.13(A). There is no dispute that appellant knowingly caused physical harm to his daughter, M.S., on August 12, 2020. Appellant claims, however, that he did so in self-defense.

**{¶ 36}** The elements of self-defense with regard to the use of non-deadly force are (1) defendant was not at fault in creating the situation that gave rise to the affray, (2) defendant had both reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of bodily harm, and (3) the only means of protection from that danger was the use of force not likely to cause death or great bodily harm. *See In re T.S.,* 5th Dist. No. 21 CAF 08 0039, 2022-Ohio-975, ¶ 37 and *State v. McGowan*, 10th Dist. No. 08AP-55, 2008-Ohio-5894, ¶ 26.

**{¶ 37}** R.C. 2901.05(B) sets forth the burden of proof with respect to self-defense as follows:

> (1) A person is allowed to act in self-defense * * *. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶ 38}** Under the statutory scheme, the burden of proof of self-defense has shifted to the prosecution, but the elements of a claim of self-defense are the same. *See State v. Italiano,* 7th Dist. No. 19 MA 0095, 2021-Ohio-1283, ¶ 18, *appeal not accepted*, 163 Ohio St.3d 1496, 2021-Ohio-2270, citing *State v. Jackson*, 8th Dist. No. 108493, 2020-Ohio-1606, ¶ 17 ("Although the burden has shifted to the state, the elements remain cumulative."). Under R.C. 2901.05(B), if evidence is presented at trial that tends to support that a defendant used non-deadly force in self-defense, the state must prove beyond a reasonable doubt that the defendant did not use that force in self-defense. *State v. Carney*, 10th Dist. No. 19AP-402, 2020-Ohio-2691, ¶ 31; *State v. Jacinto*, 8th Dist. No. 108944, 2020-Ohio-3722, ¶ 46. However, because of the cumulative nature of the elements of self-defense, the state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial. *Id.*

**{¶ 39}** As set forth above, the testimony of appellee's primary witnesses, M.S. and G.A., established the following facts. Appellant was overheard as he was engaging in a heated argument with someone over the telephone before he came downstairs and became angry at M.S. when he saw the amount of fish food in the fish tank. Appellant became

angrier when M.S. did not come to the door immediately and when he saw the mess in the theater room and bathroom. When M.S. proceeded to argue with appellant about G.A., and may have called him names, appellant grabbed her by the hair, threw her to the ground, and held her face to the floor. Conversely, appellant testified M.S. punched him in the face, and he was simply holding her by the hair at arms-length to protect himself from further blows to his face.

{¶ 40} Appellant argues that his conviction of assault is against the manifest weight of the evidence because his testimony regarding the events of August 12, 2020 was more believable than the testimony of M.S. and G.A. However, "[d]eterminations of credibility and weight of the testimony are primarily for the trier of fact." *State v. Ward*, 10th Dist. No. 19AP-266, 2020-Ohio-465, ¶ 26, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony.' " *Ward* at ¶ 26, quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Consequently, "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 49, citing *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43 (finding no merit in defendant's claim that his conviction was against the manifest weight of the evidence because the jury did not believe his claim of self-defense). Here, the trial court made clear that M.S.'s and G.A.'s testimony was more credible than appellant's with respect to the critical facts in the case. Specifically, the trial court disbelieved appellant's claim that M.S. punched him in the face before he grabbed her by the hair and threw her to the ground. The trial court also disbelieved appellant's claim that he grabbed her by the hair only to prevent her from continuing to punch him.

{¶ 41} The factual foundation of appellant's self-defense claim is appellant's testimony he was not at fault for creating the situation that led to the affray and M.S. initiated the physical confrontation. Based upon the trial court's credibility determination and factual findings, it is clear that the trial court did not believe appellant's testimony that M.S. initiated the physical confrontation. If believed, M.S.'s testimony, as corroborated by G.A., supports the trial court's findings in this regard, beyond a reasonable doubt. Because

the weight of the evidence supports a finding that appellant was at fault in creating the situation giving rise to the physical confrontation in this case, appellant's conviction of assault was not against the manifest weight of the evidence. Moreover, given the trial court's finding that M.S. did not strike appellant, even if appellant was not at fault in creating the situation that gave rise to the altercation, the weight of the evidence disproved appellant's claim that he honestly believed he was in imminent danger of bodily harm prior to the time he grabbed M.S. by the hair and threw her to the ground. On this record, we cannot say that the trial court, as the trier of fact, lost its way in resolving the conflicts in the testimony and convicting appellant of assault.

### 2. Reasonable Parental Discipline

{¶ 42} "The domestic violence statute does not prohibit a parent from properly disciplining his or her child." *State v. Phillips*, 10th Dist. No. 12AP-57, 2012-Ohio-6023, ¶ 18, citing *State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991). Accordingly, "[a] parent may use physical punishment as a method of discipline without violating the domestic violence statute as long as the discipline is proper and reasonable under the circumstances." *Phillips,* 2012-Ohio-6023, at ¶ 18, citing *State v. Thompson*, 2d Dist. No. 04CA30, 2006-Ohio-582, ¶ 29, citing *State v. Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822, ¶ 12 (1st Dist.). Thus, "reasonable parental discipline is an affirmative defense to a charge of domestic violence under R.C. 2919.25(A) or assault under R.C. 2903.13(A), with the burden of proof resting with the accused pursuant to R.C. 2901.05(A)." *Faggs* at ¶ 29.

{¶ 43} "Whether any particular conduct constitutes proper and reasonable parental discipline is a question that must be determined from the totality of all of the relevant facts and circumstances." *Phillips*, 2012-Ohio-6023, at ¶ 18, citing *Thompson* at ¶ 31. In analyzing the totality of the circumstances, a court should consider (1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment. *State v. Hart*, 110 Ohio App.3d 250, 256 (3d Dist.1996). The accused has the burden of establishing parental discipline as an affirmative defense. *State v. Zielinski,* 12th Dist. No. CA2010-12-121, 2011-Ohio-6535, ¶ 27.

{¶ 44} There was competent credible evidence in the record to support a finding that M.S. was a 16-year-old girl at the time of the incident, and that her behavior leading up to

the incident consisted of overfeeding fish, keeping a messy room, arguing with appellant for G.A. to stay overnight, and calling appellant names. The evidence also shows that appellant became angry when he came down the stairs to confront M.S. and saw the food in the fish tank and the messy room.

{¶ 45} The trial court's findings relative to the assault charge were as follows:

> I heard [M.S.] say that she never used profanity against her father, but when she talked and testified and all the other things, I haven't heard sailors speak like that. Okay? It's just not right.
>
> However, *I have to go on the basis of beyond a reasonable doubt. I don't believe that [M.S.] struck Rick Starr.* I don't believe that the testimony was sufficient to prove that. * * *
>
> * * *
>
> I'm going to find him guilty of the offense of assault on [M.S.], and I'm to find him not guilty of domestic violence. *I want him on for the assault. I think that was totally your fault.* You should - - you know, you're an adult, and I hope you've learned from this experience what's right and wrong. And what I'm going to do is find you guilty of the assault. * * *
>
> * * * And I feel sorry for that young girl at 16.

(Emphasis added.) (Tr. Vol. II at 399-400.)

{¶ 46} The trial court decision sets forth the events immediately preceding appellant's use of force against M.S. The trial court disbelieved appellant's claim that M.S. struck him, and specifically found that the incident was "totally [appellant's] fault." (Tr. Vol. II at 400.) The trial court also noted: "I feel sorry for that young girl at 16." (Tr. Vol. II at 400.) Thus, the trial court's findings reveal that the trial court considered M.S.'s age, her behavior leading up to the discipline, her response to appellant's attempts at non-corporal punishment, the location and severity of the punishment, and appellant's state of mind while administering the punishment. The transcript contains evidence to support the trial court's findings as to each of the relevant factors. *See M.H.*, 10th Dist. No. 19AP-205, 2020-Ohio-4477 (convictions were not against the manifest weight of the evidence where evidence was produced to support a finding as to each of the relevant *Hart* factors); *Phillips*, 2012-Ohio-6023, at ¶ 19 (Convictions for domestic violence were not against manifest

weight of the evidence in light of appellant's claim of reasonable parental discipline where appellant admitted he slapped his two children as discipline because they would not open the door to let him in.).  Accordingly, our review of the trial court's decision and the evidence in the record shows the trial court considered the relevant *Hart* factors in concluding appellant's use of force against M.S. on August 12, 2020 was not reasonable under the circumstances.

{¶ 47}  Appellant had the burden of proof on this affirmative defense.  As previously stated, "[d]eterminations of credibility and weight of the testimony are primarily for the trier of fact." *Ward* at ¶ 26, citing *DeHass* at paragraph one of the syllabus.  Consequently, "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *Messenger* at ¶ 49, citing *Lindsey* at ¶ 43.  On this record, we cannot say that the trial court lost its way in resolving the conflicting testimony and concluding that appellant failed to establish the affirmative defense of reasonable parental discipline and he was guilty of assault.

{¶ 48}  Appellant's seventh assignment of error is overruled.

### E.  Appellant's Eighth Assignment of Error

{¶ 49}  In appellant's eighth assignment of error, appellant argues that the trial court applied the incorrect legal standard in weighing the evidence in support of appellant's claims of self-defense and reasonable parental discipline.

{¶ 50} A claim that the trial court failed to apply the correct legal standard in reviewing and weighing evidence is both legally and analytically distinct from a challenge to the manifest weight of the evidence. *M.H.* at ¶ 24.  "When considering a challenge to the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, citing *Thompkins* at 387.  "In contrast, a determination as to whether the trial court applied the correct legal standard in reviewing and weighing the evidence presents a question of law requiring de novo review." *M.H.* at ¶ 24, citing *State v. Luke*, 3d Dist. No. 14-10-26, 2011-Ohio-4330, ¶ 19, citing *State v. Moore*, 161 Ohio App.3d 778, 2005-Ohio-3311, ¶ 36 (7th Dist.).

{¶ 51} Appellant argues that the trial court applied an incorrect legal standard in review of his self-defense claim because the trial court failed to place the burden on appellee to disprove at least one of the elements of his self-defense claim beyond a reasonable doubt, but placed the burden on appellee to prove self-defense. In our view, appellant misreads the trial court's decision with regard to the burden of proof.

{¶ 52} The trial court, in announcing its ruling on the record, made the statement that "I have to go on the basis of beyond a reasonable doubt. I don't believe that M.S. struck Rick Starr." (Tr. Vol. II at 399.) Thus, the trial court found that appellee proved, beyond a reasonable doubt, that M.S. did not strike appellant. The trial court's finding that M.S. did not strike appellant supports the conclusion that appellant was either the aggressor or he was not in fear of bodily harm when he grabbed M.S. by the hair, threw her to the ground, and held her face to the floor. We disagree with appellant's claim that the trial court's use of the phrase "I don't believe that the testimony was sufficient the prove [M.S. struck appellant]," suggests the trial court placed the burden on appellant to prove that he was not the aggressor. (Tr. Vol. II at 399.) When read in context of the trial court's entire decision, we find that the trial court was simply stating there was no credible evidence M.S. was the aggressor. The record supports that finding.

{¶ 53} Moreover, the trial court specifically found that the incident was "totally [appellant's] fault." (Tr. Vol. II at 400.) Thus, there is no question that the trial court found appellee proved, beyond a reasonable doubt, appellant was at fault in creating the situation giving rise to the affray. As previously noted, a claim of self-defense is defeated if the state disproves just one of the essential elements of the defense. *Carney* at ¶ 31; *Jacinto* at ¶ 46.

{¶ 54} Accordingly, we hold that the trial court complied with the correct legal standard in the review of appellant's self-defense claim.

### 1. Reasonable Parental Discipline

{¶ 55} Appellant argues that the trial court applied the incorrect legal standard to his affirmative defense of reasonable parental discipline, and essentially failed to consider the defense, because the trial court's decision did not contain specific factual findings as to each of the *Hart* factors and did not specifically mention reasonable parental discipline. However, as previously set forth in our discussion of appellant's seventh assignment of error, the findings made by the trial court and the evidence in the record shows the trial

court considered the relevant *Hart* factors in concluding appellant's use of force against M.S. on August 12, 2020 was not reasonable under the circumstances. Thus, the record does not support appellant's contention that the trial court applied an incorrect legal standard in reviewing his affirmative defense of reasonable parental discipline.

{¶ 56} Appellant relies on *State v. Mills*, 1st Dist. No. C-960482, 1997 Ohio App. LEXIS 1161 (Mar. 26, 1997) in support of his assignment of error. In *Mills*, the First District Court of Appeals held that the trial court, following a bench trial, committed reversible error when it failed to expressly consider the defense of reasonable parental discipline before convicting defendant of domestic violence. *Mills* is distinguishable in that the trial court decision in *Mills* stated that "the **only** issue to be determined was whether the element of physical harm had been proven," which indicated to the court of appeals that the trial court had completely failed to consider the affirmative defense. (Emphasis sic.) *Id.* There is no such limiting statement in the trial court's decision in this case. Under the circumstances of this case, appellant's argument elevates form over substance.

{¶ 57} For the foregoing reasons, appellant's eighth assignment of error is overruled.

### F. Fifth and Sixth Assignments of Error

{¶ 58} Because appellant's fifth and sixth assignments of error pertain to the sufficiency of the evidence on appellant's self-defense claim, we shall consider them together. In appellant's fifth assignment of error, appellant urges us to overrule our prior decision in *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, wherein this court held that the burden-shifting language of R.C. 2901.05(B)(1), as amended March 28, 2019, did not convert the absence of self-defense into an essential element of the charged offense, such that it is appropriate for a sufficiency of the evidence review. *Id.* at ¶ 43.[4] In appellant's sixth assignment of error, appellant argues that appellee did not produce evidence which, if believed, disproved at least one of the elements of his self-defense claim beyond a reasonable doubt.

{¶ 59} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that

---

[4] The Supreme Court of Ohio has accepted Messenger's appeal in *State v. Messenger*, 164 Ohio St.3d 1460, 2021-Ohio-3594.

a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*

{¶ 60} In overruling appellant's seventh assignment of error, we determined that appellant's conviction was not against the manifest weight of the evidence. In making this ruling, we examined the evidence relevant to self-defense and appellant's claim of reasonable parental discipline. Thus, even if self-defense is subject to a sufficiency analysis in this court, the sufficiency argument raised in appellant's sixth assignment of error must be overruled. For similar reasons, our ruling on appellant's seventh assignment of error renders appellant's fifth assignment of error moot. *See* App.R. 12(A)(1)(c). Even if we were inclined to reexamine the rule of law in *Messenger*, which we are not, our determination that appellant's conviction is supported by the weight of the evidence disposes of the need to do so. *See McCrary* and *Braxton*.

{¶ 61} For the foregoing reasons, we overrule appellant's sixth assignment of error, and we find appellant's fifth assignment of error moot.

### G. Fourth Assignment of Error

{¶ 62} In appellant's fourth assignment of error, appellant contends that the trial court committed plain error when it failed to expressly rule on the Crim.R. 29 motion for acquittal asserted by appellant at the close of appellee's case-in-chief. We disagree.

{¶ 63} Pursuant to Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." This means the trial court may grant a Crim.R. 29 motion only where, construing the evidence most strongly in the state's favor, the evidence is insufficient to sustain a conviction. *State v. Wallace*, 10th Dist. No. 08AP-2, 2008-Ohio-5260, ¶ 63, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991). Thus, a Crim.R. 29(A) motion for judgment of acquittal tests the sufficiency of the evidence. *State v. Black*, 10th Dist. No. 19AP-637, 2021-Ohio-676, ¶ 16.

{¶ 64} In ruling on appellant's seventh assignment of error, we determined that appellant's conviction was not against the manifest weight of the evidence based on witness testimony appellee produced in its case-in-chief. Because that ruling necessarily included a finding that appellee's evidence was sufficient to sustain appellant's conviction, beyond a reasonable doubt, we perceive no trial court error with regard to appellant's Crim.R. 29 motion, let alone plain error. Accordingly, appellant's fourth assignment of error is overruled.

### H. Appellant's Ninth Assignment of Error

{¶ 65} In appellant's ninth assignment of error, appellant contends that he was unfairly prejudiced due to the cumulative effect of the trial court's errors.

{¶ 66} "Under the doctrine of cumulative error, 'a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error.' " *State v. Zhu*, 10th Dist. No. 21AP-10, 2021-Ohio-4577, ¶ 70, quoting *State v. Johnson*, 10th Dist. No. 10AP-137, 2010-Ohio-5440, ¶ 34, citing *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). Because we have found no merit in any of the claimed errors, the doctrine of cumulative error is inapplicable. Accordingly, we overrule appellant's ninth assignment of error.

## IV. CONCLUSION

{¶ 67} Having overruled appellant's first, second, third, fourth, sixth, seventh, eighth, and ninth assignments of error and finding appellant's fifth assignment of error moot, we affirm the judgment of the Franklin County Municipal Court, but we remand the case for that court to issue a nunc pro tunc entry correcting the error we have identified in the March 31, 2021 sentencing entry.

*Judgment affirmed;*
*cause remanded.*

NELSON, J., concurs.
SADLER, J., concurs in judgment only.

NELSON, J., retired, formerly of the Tenth Appellate District,
assigned to active duty under authority of Ohio Constitution,
Article IV, Section 6(C).

_____